IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Philip A. Rodriguez

       Plaintiff

              v.

The City Of Brighton, Colorado; A Municipal Corporation
Kenneth J. Kreutzer, Individually And In His Official Capacity As City Council Members Of The City Of Brighton, Colorado
J.W. Edwards, Individually And In His Official Capacity As City Council Members Of The City Of Brighton, Colorado
Lynn Baca, , Individually And In Her Official Capacity As City Council Members Of The City Of Brighton, Colorado
Clint Blackhurst, Individually And In His Official Capacity As City Council Members Of The City Of Brighton, Colorado
Mark Humbert, Individually And In His Official Capacity As City Council Members Of The City Of Brighton, Colorado
       Defendants.
_____

**COMPLAINT AND JURY DEMAND**
_____

COMES NOW, the Plaintiff, Philip A. Rodriguez, by and through his attorney, David M. Herrera of the law firm of Herms & Herrera, LLC, and states and alleged for his Complaint against the Defendants as follows:

This action is brought by the Plaintiff Philip A. Rodriguez for damages resulting from the termination of the public employment of Plaintiff in violation of the procedural rights of the plaintiff pursuant to 42 U.S.C. §1983 and §1988 involving retaliation based on speech under the First Amendment; breach of contract, wrongful discharge claims; and for attorney fees. Further Plaintiff brings claims arising from the same operative

1

facts for the violation of his substantive liberty interests and procedural rights of the plaintiff pursuant to 42 U.S.C. §1983 and §1988 involving the stigmatizing effects of published false statements in connection with adverse employment actions.

## I. JURISDICTION AND VENUE

Original Jurisdiction is conferred to the District Court pursuant to 28 U.S.C. §1331 and §1343(a) with regard to claims arising under 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Claims arising under 42 U.S.C. § 1983 are with regard to rights protected under the Fourteenth Amendment of the United States Constitution and the taking of Property and deprivation of Due Process of Law under color of law and infringement of protected First Amendment speech.  Jurisdiction of the District Court also applies to claims under 42 U.S.C. §1988, with regard to proceedings in vindication of Civil Rights.  Plaintiff also presents claims arising under Colorado Common law.  This Court has supplemental jurisdiction of the state claims in this action pursuant to the Judicial Improvements Act of 1990, 28 U.S.C. §1367(a).

Venue is proper in this District as the claim arose in Brighton, Colorado. 28 U.S.C. §1391.

## II. Parties

1.     Plaintiff, Philip A. Rodriguez, at the time of the Defendants' wrongful conduct resided in the City of Brighton, Colorado.  Presently, Plaintiff resides in Yuma, Arizona.

2. The Defendant City of Brighton ("City"), a Colorado home rule municipality under Article 20 of the Constitution of the State of Colorado; Title 31, Article 1, Section 202 of the Colorado Revised Statutes; and the City of Brighton charter.

3. The City Charter established that the form of municipal government shall be the "Council-Manager" form of government.

4. The Defendant Kenneth J. Kreutzer was elected to the office of Mayor of the City and pursuant to the City Charter, was a member of Council who presided over meetings of the Council, is named as a Defendant in his individual and official capacity. At the time of the incidents described herein Defendant Kenneth J. Kreutzer resided in the City of Brighton, Colorado.

5. J.W. Edwards was an elected Brighton City Council Member who, at the time of the incidents described herein resided in the City of Brighton, Colorado, and served as the Mayor *Pro Tem* of the City. J.W. Edwards is named as a Defendant in his individual and official capacity.

6. Lynn Baca was an elected Brighton City Council Member who, at the time of the incidents described herein resided in the City of Brighton, Colorado. Lynn Baca is named as a Defendant in her individual and official capacity.

7. Clint Blackhurst was an elected Brighton City Council Member who, at the time of the incidents described herein resided in the City of Brighton, Colorado. Clint Blackhurst is named as a Defendant in his individual and official capacity.

8. Mark Humbert was an elected Brighton City Council Member who, at the time of the incidents described herein resided in the City of Brighton, Colorado. Mark Humbert is named as a Defendant in his individual and official capacity.

9. Defendants Kenneth J. Kreutzer, J.W. Edwards, Lynn Baca, Clint Blackhurst, and Mark Humbert were each Brighton City Council Members (hereinafter sometimes collectively referred to as "Defendant Council Members").

**GENERAL ALLEGATIONS**

10. The Plaintiff, Philip A. Rodriguez, was hired as a full-time employee by the City of Brighton, Colorado pursuant to an employment agreement dated July 20, 2017. ("Employment Agreement").

11. Mr. Rodriguez was hired to be the City Manager for the Defendant City of Brighton, Colorado.

12. In August 2018, Plaintiff received a very positive review from all nine members of City Council and a performance-based increase to salary and benefits in September, 2018. The performance evaluation was based upon a cumulative score of 4.3 out of 5 consideration of 405 data points in a process developed by an external professional at the Colorado Intergovernmental Risk Sharing Agency (CIRSA). The employment agreement was amended on September 4, 2018, to increase compensation and benefits.

13. On October 23, 2018, Plaintiff, reported to the City Council that while creating his first budget at the City of Brighton, found nearly $70 million in the utility fund. He stated that it was out of place, far too large, and without good reason to exist. Following

the report, some council members refused to meet with Plaintiff to discuss the financial irregularity. The Mayor and four other members of the City Council became very dismissive of legal issues or ethics violations in the past that get brought to their attention.

14. Mr. Rodriguez became frustrated with the City Council's avoidance of the concerns and resistance to his proposed 75-day work plan to address the utility fund irregularities.

15. Ultimately, Plaintiff lost faith that the City Council would listen to his advice so he took his concerns and grievance elsewhere — to law enforcement.

16. On April 2, 2019, from his home and acting in his individual capacity, Mr. Rodriguez wrote a letter to the Colorado Attorney General and copied the U.S. Department of Justice identifying the approximately $70 million discrepancy in the City's utility fund and expressing his concerns of malfeasance and a suspected coverup.

17. The letter was produced on Mr. Rodriguez's home computer using his own printer, paper, envelope and postage and was mailed to the Colorado Attorney General and the U.S. Department of Justice.

18. Mr. Rodriguez specifically addressed matters of public concern involving, *inter alia*, what appeared to be a significant growth in water utility rates resulting in a $70 million fund that was out of place, far too large, and without good reason to exist.

19. Mr. Rodriguez complained that when he tried to get more information and conduct an investigation into the overcharging of utility rates and the use of excess funds he was met with resistance from the Director of Utilities and members of the City Council itself.

20. On April 2, 2019, Mr. Rodriguez provided a notice to the City Council that he had written a letter of concern to the Colorado Attorney General and the U.S. Department of Justice "outlining a number of concerns I have about the finances of the City of Brighton, most specifically the Utilities Fund."

21. Following the issuance of the letter to the Attorney General and the U.S. Department of Justice, Mr. Rodriguez's relationship with the Defendant Members of the City Council dramatically deteriorated.

22. Defendant Council Members, including specifically Defendants Baca and Blackhurst, as well as the City Attorney acting on behalf of Defendants Kreutzer, Edwards, Baca, Blackhurst, and Humbert, repeatedly demanded to be given a copy of the letter Mr. Rodriguez had written in his personal capacity. Mr. Rodriguez declined to provide a copy of his letter.

23. On April 18, 2019, Defendants Kreutzer and Edwards advised Plaintiff to consider his future and to work out a possible "exit strategy" for himself because they said, "you don't want your career to blow up." This in-person discussion with Mr. Rodriguez was in the context of a discussion regarding the overcharging of utility rates and the letter to the Colorado Attorney General and copy to the U.S. Department of Justice.

24. At the April 18, 2019 in-person discussion, Defendant Edwards, referring to the letter to the Colorado Attorney General and copy to the U.S. Department of Justice, stated: "I don't appreciate not knowing about it, when you know, that's, that's a punch in

6

the frickin gut." And, "[t]here's just some things that I just don't like the direction we're headed in and this just seems to be more turmoil than good."

25. On May 21, 2019, Defendant Baca embarked on a campaign to disgrace and remove Plaintiff from his position as City Manager, a campaign that included stating falsehoods about Mr. Rodriguez during a public meeting on May 21, 2019.

26. The Employment Agreement provided, *inter alia*, that:

   a. Mr. Rodriguez was required to reside within the city of Brighton;

   b. The employee's performance was to be evaluated annually with (1) individual meetings with Council members and the Mayor or his/her designee, with the Mayor keeping a summary of the content of each meeting, (2) a meeting between City Council as a whole and Employee, and (3) a written summary of the assessment results to be kept by the Mayor and copied to Employee.

   c. The contract can be terminated by (1) Mutual Agreement; (2) Unilateral Termination by City without cause upon written notice. By paying nine months of salary plus accumulated leave; (3) Termination for Cause which includes (i) failure to substantially comply with the terms and conditions of the Agreement; (ii) violation of any law of the United States or State of Colorado which would constitute a misdemeanor involving dishonesty or moral turpitude or a felony; (iii) refusal to perform any required duties or performing duties incompetently; or (iv) failure to satisfactorily carry out the duties and responsibilities of the position of City Manager.

      d. The Employment Agreement required that before the Employee is terminated for cause, he shall be given, if he so requests, a written statement of the reason(s) alleged for his termination for cause and he has the right to be heard thereon at a public meeting of the City Council prior to the final vote of the question of his termination for cause.

27. On information and belief, on or about July 8, 2019, Defendant Council members held serial one-on-one discussions, comprised a "walking quorum", and held meeting with three or more of each other to conduct straw polls regarding the suspension and termination of Philip A. Rodriguez.

28. On or about July 8, 2019, the Defendant Council Members held secret meetings in violation of the Colorado Open Meetings Act, C.R.S. 24-6-401, *et seq*., where decisions were made to suspend Plaintiff with the expectation of terminating his employment.

29. These illegal meetings by the elected City Council members eventually resulted in a memorandum dated July 8, 2019, from Defendant Kreutzer stating: "having conferred independently with Councilmembers J. W. Edwards, Clint Blackhurst, Mark Humbert and Lynn Baca and pursuant to authority provided by Charter, Article 5.2, I Mayor Kenneth J. Kreutzer am requesting that a special meeting of the City Council be held on Tuesday, July 9". The agenda for the special meeting called for the removal of Philip A. Rodriguez as City Manager and replacing him with Marv Falconburg, the Assistant City Manager.

30. Notably, Defendant Kreutzer did not confer with Council members Johnston, Pollack, Wallin, or Mills, none of whom are defendants in this action.

31. On information and belief, following this July 8, 2019, memorandum, and before the July 9, 2019 special meeting, Defendant Council Members held one or more meetings, without notice to the public or their employee, Philip A. Rodriguez, with three or more of each other to conduct straw poll(s) regarding the suspension and termination of Philip A. Rodriguez.

32. The Defendant Council members failed to advise the Plaintiff of their meeting after the July 8, 2019, memorandum and before the July 9, 2019 Special meeting which involved his employment and failed to advise the Plaintiff of his right to have discussion of his employment held in open or executive session pursuant to C.R.S. §24-6-402(4)(f)(I).

33. On or about July 9, 2019, Plaintiff learned of a posting by Defendant Baca on the Brighton Blade's Facebook page referencing the Plaintiff I am stating, "So let's get to the real issues. I continue to raise questions about the water fund in our city's finances. During his time, Rodriguez has had five finance directors and the water issue is still unresolved."

34. On July 9, 2019, Counsel for Mr. Rodriguez wrote that, "Taking such an action of non-renewal without performing the annual performance evaluation breaches the employment contract."

35. The July 9, 2019, letter also advised the City Council that:

> Mr. Rodriguez, as an individual citizen, has informed law enforcement of potential criminal conduct involving the inexplicable $70 million in apparent

overcharges in the City's Utilities Fund. Your proposed action appears to violate both C.R.S. §24-34-402.5 and C.R.S. §18-8-706.

36. Defendant Kreutzer stated at the public meeting that, "The basis of my decision stems with a personnel issue, is personnel in nature and I am not going to make remarks concerning personnel issues. I can and will tell you in my own words what is not the reason. That is that this situation is concerning the Utilities Fund and the impending forensic audit."

37. Defendant Blackhurst stated at the July 9, 2019, public meeting that he has "lost confidence in the City Manager and feels he has failed in several areas as an ethical leader." Councilmember Blackhurst then stated that he "will continue to look into the Utility Fund to find out what happened."

38. According to the minutes of the July 9, 2019, public meeting Defendant Humbert stated that:

> When the City Manager spoke to Councilmember Humbert about the Utility Fund issues, it was not stated that there was something illegal done, just that it was unusual and it was going to be looked into to find what was wrong. Something needs to be done to show good faith to the citizens. Councilmember Humbert lost faith in the City Manager. It has been stated that the funds have been misspent; the funds are not missing, they are still in the account. Members of Council have been accused of not authorizing an audit; City Council did approve the audit.

39. As stated above, if the basis for termination is for cause, the Employment Agreement required that before the Employee is terminated for cause, he shall be given, if he so requests, a written statement of the reason(s) alleged for his termination for cause and he has the right to be heard thereon at a public meeting of the City Council prior to the final vote of the question of his termination for cause.

40.     Prior to the scheduled July 16, 2019, City Council meeting set to terminate Mr. Rodriguez, a demand was given to the defendants for a written statement of the reason(s) alleged for his termination for cause.

41.     Defendants failed to provide a written statement of the reason(s) alleged for his termination for cause.

42.     On July 16, 2019, just before the public meeting, Defendant Blackhurst gave an interview where he stated that his vote to fire Rodriguez stems from "complete incompetence." Mr. Blackhurst further stated:

> "I probably know well over 100 of the city employees. . . . And, I was hearing stories about his leadership style that had me greatly concerned. In the two years since he's been there - we've lost seven directors. Seven different directors. And they've all been fired or forced to resign. I just don't have any confidence in his leadership right now."

43.     Thereafter, on July 16, 2019, the Brighton City Council held a City Council meeting to terminate Mr. Rodriguez.

44.     At that City Council meeting the five Defendant Council members voted, without stating a reason or comment to terminate Mr. Rodriguez. Four council members voted against terminating Mr. Rodriguez.

**FIRST CLAIM FOR RELIEF**
FIRST AMENDMENT FREE SPEECH

45.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth above in paragraphs 1 through 44 hereinabove as if fully set forth.

46.     Plaintiff's April 2, 2019, letter, written from his home and in his individual capacity, to the Colorado Attorney General and copied the U.S. Department of Justice letter complaining of an inexplicable $70 million in the utility fund, overcharging of utility

11

rates and the use of excess funds, was protected speech that involved a matter of public concern.

47. While Plaintiff had no job duty to report the financial irregularities to law enforcement, he determined that such a report to the Attorney General's office would not threaten any of the work of his office, the morale of the City Council, the proper functioning of the City of Brighton, or adversely affect the Council's substantive decisions.

48. Plaintiff's April 2, 2019, letter engaging in the protected speech outweighed the employer's interest in regulating the speech.

49. Plaintiff's April 2, 2019, letter was a substantial motivating factor behind the employer's decision and the adverse vote by the individual defendants' votes to take an adverse and retaliatory employment action against the employee, Plaintiff Philip A. Rodriguez.

50. Based upon prior performance evaluation and the failure to conduct the contractually mandated 2019 performance evaluation, Defendants would not have reached the same employment decision in the absence of the protected conduct.

51. At the time of the suspension and at the time of the termination of employment, it was well established in Tenth Circuit law and precedent that Plaintiff had a right to be free from retaliatory employment action based on his protected First Amendment activities was potentially violated such that it put defendants on notice of the impropriety of their alleged retaliation.

52. As a direct and proximate result of the Defendants' actions under color of law, Plaintiff Philip A. Rodriguez suffered an adverse employment action including

12

suspension and termination of his employment, emotional injury, loss of earnings, loss of employment benefits, loss of earning capacity, a loss of professional reputation, and public humiliation.  Plaintiff also suffered personal financial loss and incurred legal costs and expenses.

SECOND CLAIM FOR RELIEF<br>LIBERTY INTEREST

53. Plaintiff Philip A. Rodriguez hereby re-alleges and incorporates by reference the allegations set forth above in paragraphs 1 through 52 hereinabove as if fully set forth.

54. As described above, Defendants published allegations against Plaintiff Philip A. Rodriguez that resulted in the adverse employment actions imputing corruption and dishonesty in that it was alleged that each had violated ethical rules in the employment relationship, were engaged in favoritism, and improper manipulation of rates.

55. The Defendants Kenneth J. Kreutzer, J.W. Edwards, Lynn Baca, Clint Blackhurst, and Mark Humbert for themselves and on behalf of the Defendant City Council made statements impugning the plaintiff's good name, reputation, ethics, honor, or integrity.

56. Defendants Kenneth J. Kreutzer, J.W. Edwards, Lynn Baca, Clint Blackhurst, and Mark Humbert for themselves and on behalf of the Defendant City Council published allegations against Plaintiff Philip A. Rodriguez that were false, stigmatizing, and adversely affected other personal and professional relationships.

57. Defendants Kenneth J. Kreutzer, J.W. Edwards, Lynn Baca, Clint Blackhurst, and Mark Humbert for themselves and on behalf of the Defendant City Council made the statements in the course of termination proceedings.

58. Defendants failed to provide Philip A. Rodriguez with notice and a hearing (so that the employee had an opportunity to clear his name) when the false information which created the stigma was disseminated in connection with his termination or adverse job action.

59. As a direct and proximate result of the Defendants' actions under color of law, Plaintiff Philip A. Rodriguez suffered an adverse employment action, emotional injury, loss of earnings, loss of employment benefits, loss of earning capacity, a loss of professional reputation, and public humiliation.  Plaintiff also suffered personal financial loss and incurred legal costs and expenses.

THIRD CLAIM FOR RELIEF
BREACH OF CONTRACT

60. Plaintiff Philip A. Rodriguez hereby re-alleges and incorporates by reference the allegations set forth above in paragraphs 1 through 59 hereinabove as if fully set forth.

61. Plaintiff was offered a contract for employment with the Defendant City of Brighton, Colorado.

62. The Contract was accepted by Plaintiff and he commenced work as the City Manager of the City of Brighton, Colorado.

63. That agreement also provided for an annual performance evaluation with (1) individual meetings with Council members and the Mayor or his/her designee, with the

Mayor keeping a summary of the content of each meeting, (2) a meeting between City Council as a whole and Employee, and (3) a written summary of the assessment results to be kept by the Mayor and copied to Employee.

64. Defendant City of Brighton failed and refused to perform the contractually required performance evaluation.

65. That agreement provided that if Plaintiff was terminated for cause that he was entitled to written notification of the cause and the right to be heard thereon at a public meeting of the City Council prior to the final vote of the question of his termination for cause.

66. The individual Defendants all publicly expressed immediately before the public meeting that the proposed termination for Plaintiff was for cause, but at the public meeting each refused to offer any public statement or provide a written statement of cause, thereby denying Plaintiff the right to be heard thereon at a public meeting of the City Council prior to the final vote of the question of his termination for cause in violation of the terms of the express contract.

67. WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiff and against Defendant City of Brighton, pursuant to the written agreement, on his Second Claim for Relief for special damages to be proven at trial, plus prejudgment interest, post judgment interest, attorney fees pursuant to the contract, costs, and for such other and further relief as to this Court may deem just and proper.

FOURTH CLAIM FOR RELIEF
WRONGFUL DISCHARGE – RETALIATION
EXERCISING SPECIFIC RIGHTS AND PUBLIC DUTY

68.     Plaintiff incorporates paragraphs 1 through 67 as if set forth in full.

69.     On April 2, 2019, from his home and acting in his individual capacity, Mr. Rodriguez wrote a letter to the Colorado Attorney General and copied the U.S. Department of Justice identifying the approximately $70 million discrepancy in the City's utility fund and expressing his concerns of malfeasance and a suspected coverup.

70.     On or about July 8, 2019, "the Defendant Council Members held secret meetings in violation of the Colorado Open Meetings Act, C.R.S. 24-6-401, et seq., where decisions were made to suspend Plaintiff with the expectation of terminating his employment.

71.     At the July 9, 2019, City Council meeting, Plaintiff Philip A. Rodriguez was suspended as City Manager pending action to terminate him scheduled for July 16, 2019.

72.     On July 16, 2019, the Brighton City Council held a City Council meeting to terminate Mr. Rodriguez and did terminate his employment with the five Individual Defendants voting to terminate.

73.     Plaintiff was the victim of a retaliatory motive based upon his objections to what he reasonably perceived as a potentially unlawful activity involving rate gouging, possible misuse of government funds, manipulation of, cover-up and altering the public record.  The suspension and termination decisions were within days of plaintiff's whistleblower activities.

74.     Defendants intended the termination to be in retaliation for Plaintiff having disclosed to the Colorado Attorney General and copied the U.S. Department of Justice

what he perceived as a potentially unlawful activity involving rate gouging, possible misuse of government funds, manipulation of, cover-up and altering the public record.

75. The Defendants Kenneth J. Kreutzer, J.W. Edwards, Lynn Baca, Clint Blackhurst, and Mark Humbert for themselves and on behalf of the Defendant City Council terminated the employment of Plaintiff because the Plaintiff exercised his First Amendment free speech rights and his public duty to object to the impropriety of conduct and perceived unlawful order to manipulate and change the public record.

76. The immediate, involuntary termination of Plaintiff's employment constitutes the willful and wanton tort of wrongful discharge by the individual Defendants Kenneth J. Kreutzer, J.W. Edwards, Lynn Baca, Clint Blackhurst, and Mark Humbert for themselves and on behalf of the Defendant City Council.

77. Such unlawful acts in violation of Plaintiff's legal rights or privileges as a worker are contrary to clearly established public policy and violated Plaintiff's legal rights or privileges as a worker pursuant to C.R.S. §24-34-402.5 and C.R.S. §18-8-706.

78. As a direct and proximate result of the Defendants Kenneth J. Kreutzer, J.W. Edwards, Lynn Baca, Clint Blackhurst, and Mark Humbert willful and wanton violation of Plaintiff's legal rights and privileges to be free from the tort of wrongful discharge, Plaintiff suffered emotional injury, loss of earnings, loss of employment benefits, loss of earning capacity, a loss of professional reputation, public humiliation, personal financial loss, incurred legal costs and expenses.

WHEREFORE, Plaintiff Philip A. Rodriguez prays this Court enter judgment for recovery of past, present and future damages in an amount to be determined by the trier

of fact to reasonably compensate Plaintiff for damages, losses, costs, and attorneys fees; for punitive damages in an amount to be determined by the trier of fact to reasonably compensate Plaintiff for the Defendants' willful and wanton conduct, tortious conduct, deprivation and taking of Constitutionally protected rights; and any other relief to which Plaintiff is entitled.

    Respectfully submitted this 8th day of July, 2021.

                            s/ David M. Herrera_____
                            David M. Herrera, #12818
                            Herms & Herrera, LLC
                            3600 South College Avenue, Suite 204
                            Fort Collins, Colorado 80521
                            (970) 498-9999
                            Fax: (970) 472-5365
                            E-Mail: David@hhlawoffice.com
                            Attorney for Plaintiff

Plaintiff demands this matter be tried before a jury of six persons.

s/ David M. Herrera_____
David M. Herrera